So our next case today is 5-25-0723, Bosch and Associates, CPA's, LLC v. Blackfoot Properties,  I'm sure I've got Mr. Holey for the appellant and Mr. Stewart for the appellee, that's correct? That's correct. All right. I don't know if you could spell Bosch, does he pronounce it Butch? Yes, sir. I'm sorry. You know that, that's your territory. So, with that, Mr. Holey, you're ready to proceed? Yes, sir. Go right ahead. Good morning and may it please the court, my name is John Hundley and I represent the appellant, Blackfoot Properties, LLC. In their respective statements of the issues in this case, in their respective briefs, the parties agree that there are three issues before the court today. First, is the plainest claim barred by the statute of limitations. Secondly, is it barred by the mediation clause of the purported contract. And thirdly, is the judgment of the circuit court against manifest weight of the evidence. Regarding the statute of limitations issue, it really evolves into two sub-issues. First, is the case barred by the contractual statute of limitations of one year set forth in the purported contract. And secondly, is it barred by the statutory statute of five years set forth in the Code of Civil Procedure. In the minutes that follow, I will discuss each of these issues with you. Regarding the statutory statute of limitations, we contend that the five-year bar of section 13-205 of the Code of Civil Procedure applies. That's the bar for unwritten contracts. Whereas the plaintiff contends that the ten-year bar of section 13-206 applies, being the bar for written contracts. There's no dispute that this case was filed seven and a half years after the cause of action accrued. So, this issue is crucial and dispositive. Regarding which statute applies, we think, when you read through the briefs, it ultimately comes down to one issue. Does the Seventh Circuit case of Blanchard & Associates v. Lupin Pharmaceuticals, the sole statute of limitations case cited by the plaintiffs, mean that a party in an Illinois court case can provide the essential element of the amount in question by parole evidence? We say the answer to that question is no for three reasons. First of all, Seventh Circuit cases are not binding on Illinois courts. See our cases cited in our reply at page 10. Secondly, the hourly rates were in fact stated in the contract in Blanchard. See page 923 of that decision. But they are not stated here. See pages 10-18 of our appendix attached to our opening brief. Thirdly, there's abundant case law cited in our brief which establishes that the amount in question is an essential term which must be stated in writing for Section 13-206 to apply. The amount in question is not stated in the purported contract here. Therefore, Section 13-205 applies. Now, this statutory issue is dispositive. You do not have to face any other issues if you agree with us on this point. I have a question. Yes. I apologize for interrupting. The letter in terms of additions provides, in this case, provides that the fees will be billed on the complexity of the work performed and the quality and completeness of your records. Your argument is that doesn't sufficiently set forth the amount in dispute? That's right, Judge. Thank you. Yes. And as the case law that we've cited in our brief establishes, you've got to establish the dollar amount. And that language. The Blanchard, they set forth the dollar amount, but not the number of hours. That's right. Okay. At most, Blanchard would stand for the proposition that the dollar rate is sufficient. But you don't really even have to reach that issue because it's not stated here. With respect to the contractual statute of limitations, there's no dispute that the reported contract provided that you agree that any claim arising out of this engagement letter shall be commenced within one year of the delivery of the work product to you, regardless of any longer period of time for commencing such claim as may be set by law. The claim is understood to be the demand for money or services, comma, the service of a suit, comma, or the institution of arbitration proceedings against auction associates, CPAs, LLC. And I apologize. I am consistently mispronouncing the name of the claim, and I apologize. I do have a question about that letter. What significance should we give the fact that throughout the letter and the terms and conditions, the paragraphs begin with we or you in setting forth what may or must be done? And this provision starts with you. And the plaintiff in its response makes some emphasis to that point. I don't think you should attach great significance to it. As I put in my brief, to make a significance on that point is to say that the layman here is supposed to understand that when we say you agree, we mean we do not agree. It's just not something that a layman would attach a significance to. They argue that they've got a one-year statute of limitation going one way and a 10-year statute going the other way. That's unreasonable. Now, the provision that I read clearly imposes the one-year bar, and contractual statutes of limitation are enforceable if they are reasonable under the case law set forth in our opening brief. The plaintiff here does not claim that the one-year statute is unreasonable. The key sentence that I read is the claim is understood to be a demand for money or services, the service of a student, or the institution of attrition proceedings against projects associated with CPAs, LLC. Do you think the statute of limitations language is clear that it's one-sided, or do you think it's ambiguous? Or does it matter? If it's ambiguous, it goes against the plaintiff. If it's ambiguous, it goes against the plaintiff. I just don't believe that you can attach significance to the word you as it's used in this context to mean we do not agree. Only you. It doesn't spell that out, and I don't believe it should be so construed. What about at the end of that paragraph that specifically says institution of arbitration proceedings against Butch & Associates? Yes, let me get to that. Plaintiff argues that the against Butch cause modifies the entire series, but that is incorrect. Under the last antecedent doctrine, you interpret causes like the against Butch cause as applying to the noun that is most recent before the modifier, not to elements of the series that are more remote. In pages 13 and 14 of our brief, we set forth that doctrine and the many, many, many cases that have held it to be good law. Therefore, the against Butch cause applies only to the institution of arbitration proceedings and not to the clause about service of a suit or demand for money. They argue that that claim was abandoned when the matter got to the bench trial, but I believe in your reply, you basically pointed out that that issue was raised early in the proceedings and then I'm assuming the trial court either denied it or did rule on it. But it dismissed, declined to dismiss the case. Yes, Judge. Secondly, the against Butch cause position of the plaintiff is contrary to the rule on construction of ambiguous documents. Under that rule, of course, documents which can reasonably be construed in two or more ways are construed against the drafter. It's undisputed that the plaintiff drafted the agreement here. And so the subject language is interpreted against the plaintiff. Plaintiff argues that these cases rules are overruled by principles of contractual interpretation, citing some cases. But the plaintiff's cases don't claim to overrule either of these rules. Rather, in the subsequent cases that we've cited in our reply brief, that is to say cases decided after the plaintiff's cases, prove that our doctrines are not overruled. Therefore, the one-year statute of limitations applies and the action is borrowed. Moving to the mediation clause, it's set forth in our briefs. It is clearly stated as a condition preceding. There is no argument here that the cause, the mediation clause, was complied with. And under the case law set forth in our brief, strict compliance is required when contracts contain a condition preceding clause. Courts enforce condition preceding clauses despite harsh consequences on parties that ignore them. Now, the plaintiff contends that this is an argument for the exclusive remedy of arbitration, but it isn't. The text of the provision doesn't mention arbitration. The text does not say that any remedy is exclusive. It talks in terms of the sequence. If such and such applies, then first we will mediate before we go to arbitration or litigation. And when you look at the plaintiff's cases on the exclusive remedy of arbitration issue, there's simply an apposite. When you read them, they have no application to the case that are. Question. Yes. Should we give any significance to the fact that there was not filed a motion to stay pending mediation? No. No. It's a condition preceding. It had to occur before the filing of the case. It had not occurred. Therefore, the case was barred. Thank you. The plaintiff's response also raises a waiver issue, which was not raised below. It relies upon one case, the Apricolor case. In Apricolor, there had been four years of legal maneuvering, including the removal of the federal court and two motions for summary judgment. Here, in contrast, we raised the mediation issue, the first thing out of the gate. That's page C25 of the record. It was never abandoned. And as we set forth in the reply at page 12, state courts dispense a waiver in this context. We believe the condition preceding should be enforced, which has another ground for reversing the judgment of the circuit court. Lastly, we come to the manifest weight of the evidence. There's no dispute that that's the standard that applies here, and there's no dispute as to what that means. A decision is against the manifest weight of the evidence, quote, when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. That's Eichinger v. Gross, 202 Illinois 2nd and 252 and other cases cited in our briefs. Let me ask you this about the manifest weight issue. There seem to be several problems for both sides. As I understood the briefs and the record, the relationship between the accountant and the defendant had broken down in 2015, and they couldn't hardly talk to each other without getting into a fight, which would lend credence to the idea there was no contract in 2016, except there's a document with a signature of Mr. Bonham on that document. So with the manifest weight of the evidence, I know that Mr. Bonham testified. He didn't sign that. There was a stamp, but he didn't authorize anybody to use that stamp. But the court apparently accepted that as a signed document. So how do we find that's against the manifest weight of the evidence? Because you look not just at the testimony but at the quality of the testimony. The plaintiff's testimony, including the testimony about the document that you're inquiring about, was equivocal and speculative, full of motives, thinks, beliefs, and statements, to my knowledge, without any showing that he had any knowledge. Mr. Bonham's testimony, in contrast, was clear, unequivocal, and based on firsthand knowledge. I have a question about Mr. Bonham's testimony. Yes. The record on 77, he testified about a phone call from Mr. Bush, is it, I guess?  Bush. Bush. And Bonham testified that he was upset because, quote, all he wanted him to do was file an extension. Given the deteriorated relationship, what are we to make of the fact that apparently he expected him to file an extension? Yes. The testimony, if you believe Mr. Bonham, and we believe that you should, is that all he asked for was to file an extension. That's the one thing. But he also testified he would never have asked him to do anything. And the trial court's hearing all that and making some credibility determinations. Well, the trial court didn't indicate that it was making credibility indications. It simply indicated that it thought that the preponderance of the evidence was against my client. But that gets back to the way, not the amount of the testimony, but the quality of the testimony. Thank you. And here, I see my time has expired. We will give you a boycott. All right. Here we believe that when you weigh the testimony under the proper standard, we win on the manifest weight argument. But there's another issue. The plaintiff's case is based on e-mails that should not have been admitted. That's established in our brief at page 20. The response of the plaintiff does not address that issue. Therefore, it's been forfeited under Rule 341H7. We've given you four independent reasons to reverse the court, the two statute of limitations issue, the mediation issue, and the manifest weight issue. The plaintiff wants to win on all four of these issues in order to sustain this judgment. Clearly, it cannot do so. We ask you to reverse the judgment with costs. Thank you. Back on the manifest weight issue, is there anything to be made from the fact that the document authorizing electronic filing, a signed document, was not one of the exhibits and the tax return that was prepared was not signed? In fact, it said client's copy, indicating the client's copy was never given to the client. Is that? Yes. That chips away at the credibility of Mr. Bush. He didn't know whether it was e-filed or whether it was filed by the firm. His testimony is equivocal on that point and, indeed, contradictory. My client was clear that he'd never seen the return until the date of the trial. Mr. Bush could not remember having the client conference with Mr. Bonin. It is customary when the return is turned over. I just don't believe that Mr. Bush believed on that point. Any other questions? Thank you. Thank you.  Please, the court. Mr. Hundley. My name is Greg Stewart. I am the attorney for Butch & Associates, CPA's LLC. I was the attorney for Butch & Associates at the time of trial. I'm the attorney for Butch & Associates as we come before you today at the appellate court level. I will start by doing a scorecard. We've got LLCs here, I think, if you've seen from the brief or the briefing of the parties. What you have is Butch & Associates, which is an LLC. Its manager member is a gentleman by the name of Keith Butch. Blackfoot Properties LLC is a single-member LLC. Its single member and manager is Frank William Bonin II, commonly referred to as Bill Bonin Jr. So there's names to entities. Mr. Hundley has went through the issues before the court. Let me indicate the following. When you get to the trial, I just want to state this up front. A lot of time was spent, and it's been indicated already from the bench, on Mr. Bonin stating he did not sign the agreement, which is before the court, and the court took a fair amount of testimony as to what he said. He didn't sign it. He had a signature stamp. He didn't allow anybody to use it. That was a lot of the trial time was spent on that. I notice that's not before the court now. It's not raised. However, we do have a statute of limitations issue. Mr. Bonin basically takes two positions. First, there's a one-year statute of limitations contained within the contract, which bars Butch from filing this claim after a year. Second, and in the alternative, Mr. Bonin takes the position that the written agreement that was before the court is actually not a written agreement for purposes of the 10-year statute of limitation because it fails to contain all essential terms. I understood Mr. Hunley to say that the Blanchard case that we cite stands for the proposition that you can't allow parole evidence to determine the essential elements of the contract. That's incorrect, as Justice Clark has indicated. If you have, before the court, a contract which merely gives an hourly rate, how do you determine what's open or unless you have the number of hours worth, you have to go to parole evidence for something. For example, if I went to fix your car, I might give you an idea of what's involved, but at the end, you're going to get a bill for all the parts and everything else that I put in. Sometimes you can't do a contract that says you're going to owe me $1,000 at the end of the day. I ask you to keep that in mind. The second issue, after you get past that statute of limitations, is the alternative resolution, which I'll cover. Let's back up just a second, though. Yes. I understand there's not a total amount due in the contract, but was there an hourly rate set forth in the contract? There is not an hourly rate set forth in the contract. However, let's look at what the contract says to address what you raised, Your Honor. The contract... Somewhere there's testimony, or somewhere it's in the record that Mr. Boots charged, I forget the exact number, like $275 an hour and his underling charged $75 an hour. Correct. But that wasn't in the written contract. It was not in the written contract. It was in the testimony offered. But the contract covers... Justice Clark pointed this out. He read the language about it's determined based upon the complexity of the work, the completeness of the records, but he goes on to say, and I can quote it from you, but it says, You will pay me when I bill you, so you'll pay the bill, and if you don't, you're going to pay me 1.5% interest per month plus my legal fees if I have to go to collection. So the contract references being paid per the bill. So in this case, if you apply the Blanchard standard, what parole evidence would the court accept? The court accepted the bill, which was $1,800 based upon the hourly rate that Mr. Boots indicated was expended based upon the complexity of the work and based upon the completeness of the records that were provided to do the Schedule C. And I don't know if you know how this works, but if you're a single member LLC, within your individual tax return, you'll see a Schedule C come in for that LLC. You have to be provided as an accountant with the work, the numbers to prepare the Schedule C, which clearly, within the exhibits, Your Honors, there was a tax return this big. I read that tax return. It gave me a headache. Well, it probably gives a lot of people a headache. To the statute of limitations, to address something Justice Clark stated, the word you is used. The word you is defined early on in the agreement to be Blackfoot Properties, LLC. So if you read the issue of the one-year statute of limitations, here's what the contract says. Blackfoot Properties, LLC agreed that any claim arising out of this engagement letter shall be commenced within one year of the delivery of the work product to Blackfoot Properties, LLC. Regardless of any longer period of time for commencing such claim as may be set by law, now here comes the important sentence. A claim is understood to be a demand for money or services, the service of the suit, or the institution of arbitration proceedings against Butchett Associates. It's Mr. Bonham's argument that, pursuant to the last antecedent clause, the Butchett Associates provision only applies to the commencement of arbitration proceedings. There's a rule of contract instruction that says you don't interpret a contract to make its terms or any terms superfluous. If you read it the way Mr. Bonham wants you to, then here's the essence of this. All claims are borrowed within a year, no matter which side goes after the other for whatever reason. But he says the commencement of arbitration proceedings that has to be done within one year only applies to a claim from Blackfoot Properties to commence arbitration against Butchett Associates. It would make no sense because at the end of one year, pursuant to their reading of this contractual provision, the claim is already borrowed. There would be no reason for an arbitration procedure to go beyond one year. It's our position on behalf of Butchett Associates that the language that I read to you is clear. It's a one-year statute of limitations applicable to Blackfoot Properties LLC. And you're to give the contract its plain meaning. It's not ambiguous. It says what it says. Their request is to read into its superfluous provisions. On the 10-year statute of limitations issue, is this a written contract that has all the essential terms? It's our position it's a yes. I want to read to you the language. It says, again, as you've quoted, the agreement provided the fees will be billed based upon the complexity of the work performed and the quality and completeness of the records. It then goes on to say, the balance, and I put in brackets the fee as billed, is due upon completion of the return. Thus, Blackfoot agreed to pay the billed amount that was submitted by Butchett Associates. That billed amount was in the record. It was $1,800. The bill was shown as it was in it. Therefore, it's the position of Butchett Associates that the client representation agreement, which has the signature of Mr. Bonin on it, constitutes a written agreement for purposes of the 10-year statute of limitations. If that's correct, this case was filed well within the statute of limitations, and that argument should fail. Next issue was the alternative dispute resolution. What Mr. Bonin did in this case is to say, since you didn't pursue alternative dispute resolution prior to the filing of the claim, your complaint must be dismissed. We have found no Illinois law that states that at all. What Illinois law indicates is if there's an arbitration provision that you seek to enforce, you move to stay the proceedings, which they did not do. They filed a motion to dismiss, which was denied. They didn't seek to stay proceedings pursuant to the arbitration clause. And I kind of look at this as one of those who live by the sword, you die by the sword. You didn't ask for the relief of the stay. They went on and proceeded to trial. They waived that argument. It's a waiver of that argument. And we've presented the Appleteller case for that proposition. In Appleteller, there was motion for summary judgment that was heard, and then all of a sudden, well, we've got an arbitration clause. And the Appleteller court said, if you proceed to present triable issues of fact and law before the court, and you don't ask to go to arbitration first, then you waive it. The last item is the manifest weight of the evidence standard and the court's ruling. I think the questions kind of covered that. Well, Justice Long's question, I was glad that he brought it up because it just stuck in my mind ever since I started with this. You're going to trial on a claim without a signed tax return. You're holding up a client copy. It makes me wonder who was supposed to get that client copy. Understand your concern. The contract provides that they'll provide the tax work and clean up books. That's what the contract says. In this particular instance, there's no billing for the filing of the tax return. that was performed to prepare the Schedule C for Blackfoot properties and to clean up the books, which the record was clear on both sides. The books were a mess. Would you not agree that it's pretty essential that the work get delivered to the client? And therefore, my question, what are you doing with the client copy? Mr. Butch testified at the end that his office procedure is the client comes in and picks up the return, and that it was his memory that either Mr. Bonin or his secretary came in and picked it up pursuant to that procedure. That's the best I can offer you on that. That is what the record indicates. There was also no Mr. Butch also testified that the client would sign an electronic filing authorization. He didn't produce that signed document either. He said, I think it might be in the electronic file cabinet, but he didn't bring it or show it. And wouldn't that lend credence to the idea that we did have a contract, and here's what he signed for me to file at some point? Well, the contract indicates, Your Honor, that Mr. Butch will do the tax preparation work and clean up the books. That's what it indicates. Mr. Butch did that work. We got into an argument. But the question is, was he authorized to do the work? I don't doubt that he did the work. I've seen the tax return, too. It gave me a little bit of a headache as well. But nobody's question was, did he do the work? The question was, was he authorized to do the work? Mr. Bonin says, I didn't sign anything. I didn't authorize anybody to use my stamp. And you don't come in with any signed documents to counter that other than the document that may be his file stamp or signature stamp. That gets into the credibility issue about some things that Mr. Bonin said or didn't say at trial. There is one thing that's clear in the record. Mr. Bonin did the tax return work for Mr. Bonin and his related entities for years. But that was in 2015. Both sides testified we couldn't speak to each other after 2015. We were partners. We were in business together. But he removed me from the bank board, and I'm sore about that, and we couldn't speak after that. So that kind of brings up the question, I guess. And I fully understand. But what we're left with is Mr. Bonin said, I didn't sign anything, nor did I give approval to. And we're standing here before the court with a document that appears to be signed by Frank William Bonin II with work performed pursuant to that agreement. And the judge, based upon the credibility of the witnesses and the quality and quantity of the evidence presented, ruled in favor of Glitch and Associates on a $1,800 bill. That's what we're here for today. So if you have any questions, I'll gladly entertain them. But I have nothing further to present to the court. Ms. Bonin? I don't have any other questions. Thank you. Thank you. Thank you. Go right ahead. Mr. Stewart, in his argument, presented an argument that the written agreement was a written agreement. Therefore, Section 13-206 applies. But that's not the law. The law is that agreements, whether they're evidenced in writing or not, are interpreted as unwritten agreements under Section 13-205 unless they include certain things, including the amount in question. It's not disputed here. The amount in question was not included in this contract. Do you think the total amount had to be in? Because how does anybody know at the beginning what the total cost is going to be when you don't know how many hours are going to be involved or how complex it's going to be? Yes, and that gets to the question of whether the contract is enforceable, which is a separate issue from whether it is subject to the 10-year bar or the statute of limitations. As I listen to the evidence, to me, the total amount doesn't seem fatal, that that's not in there. But the lack of hourly rates does raise a problem. Yes, yes, Judge. Do you think the total amount is fatal also, or do you think that's something that could be? Under the Illinois case law, you've got to have the amount in question, and we've set forth a bunch of cases in our brief to that effect. The outlier is the Blanchard case, which, as I said, you don't have to apply because it's not binding upon you. Secondly, the hourly rate was, in fact, stated in the Blanchard case, and it's not stated here. Blanchard says that the hourly rate is sufficient. Illinois case law doesn't say that. But even if you apply the Blanchard case, this contract fails because it doesn't have the hourly rate. Much of the response brief is directed to the issue of interpretation of contracts. And I don't dispute the principles of contract interpretation that are set forth in that section of Mr. Stewart's brief, because I believe that they're irrelevant. As we show in our opening brief, the question isn't whether the contract is enforceable during the first five years. The question is whether it's enforceable after five years. And, of course, statutes of limitation apply whether the cause of action is good or bad. So to answer Your Honor's question, contracts such as we have here are enforceable for the first five years. They're just not enforceable after the five years under the statute of limitations issue. And that's a different issue from whether it's enforceable at all. He argued that you means Blackfoot. I think we covered that in our opening comments. He argues plain meaning and is not ambiguous. Judge, the last antecedent doctrine means that it's ambiguous. The last antecedent doctrine tells you how to apply it, and it's contrary to his position. But it's also one of two reasonable ways to interpret the cause. So under the rule against interpretation of ambiguous contracts, we win there as well. I believe unless you have questions, that's all I have. I don't have any other questions. No other questions. Thank you. Thank you, Judge. Counsel? Thank you. Obviously, we'll take the matter under advisement. We will issue an order in due course.